BILBREY, J.
Appellant, Shawn Ahearn, individually and as a putative class representative, appeals the final summary judgment issued by the trial court which found that all of the causes of action asserted in Aheam’s complaint were moot as to him individually, and as such, he lacked standing to assert claims for a similarly situated class. We agree with the trial court that certain claims were rendered moot when, after Ahearn commenced litigation but before a class was certified, the Mayo Clinic of Jacksonville and Mayo Clinic of Florida (collectively “Mayo Clinic”) waived Ah-earn’s balance owed to Mayo Clinic and offered to pay attorney’s fees. However, we do not agree that the claim for declaratory and injunctive relief by Ahearn as an allegedly aggrieved party under the Florida Deceptive and Unfair Trade Practices Act (“FDUTPA”), section 501.211(1), Florida Statutes, was extinguished by the Mayo Clinic’s actions. We therefore reverse that portion of the final summary judgment.

Background and the Complaint

On September 14, 2013, Ahearn received emergency medical treatment at the Mayo Clinic in Jacksonville. Because he was not covered by health insurance or any governmental healthcare program, Ahearn was personally billed $5,953.26 for the treatment he received. On December 23, 2013, Ahearn, through counsel, filed a complaint raising four causes of action premised in the allegations that Mayo Clinic charged him and other uncovered patients rates in excess of the reasonable value of the services provided and substantially higher than rates Mayo Clinic charges those patients covered by insurance or a governmental healthcare program.[1]
On March 14, 2014, Mayo Clinic, while continuing to deny fault, informed Ahearn that it was waiving the $5,623.26 which Ahearn still owed for the treatment following his payment of $330.00.[2] Mayo Clinic then moved for summary judgment and agreed to pay Ahearn’s attorney’s fees and costs, or allow the trial judge to assess them if an agreement could not be reached. At no time before the final summary judgment issued did Ahearn attempt to certify the class pursuant to rule 1.220(d), Florida Rules of Civil Procedure.

Summary Judgment and Standard of Review

Summary judgment “shall be rendered forthwith if the pleadings and summary *169 evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fla. R. Civ. P. 1.510(c). On an appeal of the entry of summary judgment “[w]e view the facts in a light most favorable to the nonmoving party and conduct a de novo review of such a judgment.” Maronda Homes, Inc. of Fla. v. Lakeview Reserve Homeowners Ass’n, Inc., 127 So.3d 1258, 1268 (Fla.2013).

Breach of Contract Count

Ahearn’s first count was for breach of contract. As to Ahearn individually, this became moot upon Mayo Clinic's waiver and agreement to pay attorney’s fees. “An issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect.” Godwin v. State, 593 So.2d 211, 212 (Fla.1992) (citing DeHoff v. Imeson, 153 Fla. 553, 15 So.2d 258 (1943)). On appeal, Ahearn raises the possibility that he might face some unspecified tax liability based on Mayo Clinic’s waiver of the balance of the bill. However, he did not assert any claim below for possible tax liability or attempt to amend his complaint to assert such a claim. Since Ahearn did not plead these special damages, they are not recoverable. See Precision Tune Auto Care, Inc. v. Radcliffe, 804 So.2d 1287, 1292 (Fla. 4th DCA 2002) (“Evidence of special damages is inadmissible if those damages are not pled in the complaint.”); see also Fla. R. Civ. P. 1.120(g).
Additionally, the agreement by Mayo Clinic to pay reasonable attorney’s fees and costs, or submit the issue to the trial judge, made the fees and costs issue moot. See Ramon v. Aries Ins. Co., 769 So.2d 1053 (Fla. 3d DCA 2000). In discussing whether an adjudication on the merits was complete even though a determination of the amount of attorney’s fees due remained, the United States Supreme Court has stated,
As a general matter, at least, we think it indisputable that a claim for attorney’s fees is not part of the merits of the action to which the fees pertain. Such an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action.
Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988).
As no further relief could be granted to Ahearn individually on the breach of contract claim, it was therefore appropriate to grant summary judgment as to Ah-earn individually on that count. See Cox v. CSX Intermodal, Inc., 732 So.2d 1092 (Fla. 1st DCA 1999). “A moot case generally will be dismissed.” Godwin v. State, 593 So.2d at 212.
Ahearn asserts, that even if the breach of contract cause of action as to him individually was rendered moot by the actions of Mayo Clinic, he still had standing to assert breach of contract as a class representative. Ahearn contends that Mayo Clinic' should not benefit from its action of “picking off’ a putative class representative. Ahearn cites to various federal cases to support his proposition.[3]
*170 A majority of federal cases seems to support Ahearn’s argument that a defendant. cannot “pick off” a putative class representative by rendering moot the individual claim, even if the class has not yet been certified. However, we are compelled to follow Florida Supreme Court precedent which sets forth a bright-line rule. In Sosa v. Safeway Premium Fin. Co., 73 So.3d 91, 116 (Fla.2011), the Court held before a class can be certified the putative class representative must have standing and “[t]o satisfy the standing requirement for a class action claim, the class representative must illustrate that a case or controversy exists between him or her and the defendant, and that this case or controversy will continue throughout the existence of the litigation.” In Sosa, the putative class representative had an existing case or controversy because he had a claim for an actual injury. Id. at 117. Since Ahearn no longer has a claim for individual damages for breach of contract, standing to serve as a class representative on that count is lacking as he has no case or controversy as to that claim.
Admittedly, Sosa did not involve the picking off of a putative class representative. However, other Florida district courts of appeal faced with the issue have held that if the claim of the putative class representative is extinguished before class certification, then the putative representative cannot bring a claim- on behalf of a class. For instance, in Taran v. Blue Cross Blue Shield of Florida, Inc., 685 So.2d 1004 (Fla. 3d DCA 1997), plaintiffs, individually and as putative class representatives, brought statutory claims-for allegedly being charged excessive health insurance premiums. After suit was filed, Blue Cross issued refunds to the plaintiffs, thereby extinguishing their individual causes of action and picking them off. Id. at 1007. “[I]f none of the named plaintiffs purporting to represent a class establishes a requisite of a case or controversy with the defendant, none may seek relief on behalf of himself or any other member of the class.” Id. at 1006 (quoting O’Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674, 682 (1974)) (footnote and citations omitted). See also Chinchilla v. Star Cas. Ins. Co., 833 So.2d 804 (Fla. 3d DCA 2002); Graham v. State Farm Fire & Cas. Co., 813 So.2d 273 (Fla. 5th DCA 2002); Syna v. Shell Oil Co., 241 So.2d 458 (Fla.1970).[4]

Implied Covenant of Good Faith and Fair Dealing

 Ahearn’s second count was. for breach of the implied covenant of good faith and fair dealing. “Florida contract law does recognize an implied covenant of good faith and fair dealing in every contract.” QBE Ins. Gorp. v. Chalfonte Condo. Apartment Ass’n, Inc., 94 So.3d 541, 548 (Fla.2012). However, “a duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements.” Hospital Corp. of Am. v. Florida Med. Ctr., Inc., 710 So.2d 573, 575 (Fla. 4th DCA 1998).
Since Ahearn’s individual breach of contract claim was extinguished, any claim for breach of the implied covenant of good faith and fair dealing is also extinguished. See Insurance Concepts & Design, Inc. v. Healthplan Services, Inc., 785 So.2d 1232, 1234 (Fla. 4th DCA 2001) (“[A] claim for *171 breach of the implied covenant of good faith and fair, dealing cannot be maintained under Florida law absent an .allegation that an express term of the contract has been breached.”). Likewise, since Ah-earn’s individual claim was extinguished before a class was certified, under Sosa and Taran, Ahearn cannot purport to represent the class on claim of breach of the implied covenant of good faith and fair dealing without having a case or controversy of his own.

Florida Deceptive and Unfair Trade Practices Act Claim

Ahearn’s third count alleged violations of the Florida Deceptive and Unfair Trade Practices Act (“FDUTPA”), sections 501. 201 through 501.213, Florida Statutes. In that count, Ahearn sought monetary damages, and declaratory and injunctive relief; Although combined in one count, these allegations implicate two separate paragraphs of FDUTPA,- each of which requires separate analysis.'
Section 501.211(2), Florida Statutes, provides in part, “[i]n any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney’s fees and court costs.” As is the case with Ahearn’s breach of contract claim, his claim under section 501.211(2) for damages was made moot when Mayo Clinic waived his balance and agreed to pay attorney’s fees and costs. Since he has no claim for actual damages, and only the amount of fees and'costs'is left to determine, he has no claim under section 501.211(2). Since he has no individual claim for damages, Ahearn has no standing to sue on behalf of a. class for damages under section 501,211(2). See Baptist Hosp., Inc. v. Baker, 84 So.3d 1200 (Fla. 1st DCA 2012) (holding lack of actual injury by class representative precluded class action for-damages under section 501.211(2)).
As to Ahearn’s claim in count three for declaratory and injunctive relief under FDUTPA, such claims are governed by section 501.211(1), which provides,
[wjithout regard to any other remedy or relief to which a person is entitled, anyone aggrieved by á violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.
The term “aggrieved” is not defined in FDUTPA. Mayo Clinic contends that “aggrieved” has the same meaning as “harmed,”- “adversely affected,” or “suffered damages.” Such an argument is unpersuasive given the Legislature’s use of the distinctive, wording of-subsections (1) and (2) of section 501.211. As indicated, sübsectioh (1) affords declaratory relief to “anyone aggrieved” .by a violation of FDUTPA. On the other hand, subsection (2) provides that a person may recover, “actual damages” for a “loss as a result of a violation”-of.FDUTPA. “It is well settled that legislative, intent is the polestar that guides a court’s statutory construction analysis.” State v. J.M., 824 So.2d 105, 109 (Fla.2002). “[Ljegislative intent may be discerned from the Legislature’s election to use different words to convey different meanings within á statute.” Dep't of Revenue v. Central Dade Malpractice Trust Fund, 673 So.2d 899, 901 (Fla. 1st DCA .1996). “[Wjhere the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea.”, A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts § ■ 25, p. 170 (2012).
Since- it is presumed: that- the Legislature intentionally used different terminology in subsections (1) and (2), the question *172 becomes ■ how to define these terms. Black’s Law Dictionary ■( 10th ed.2014) defines “aggrieved” as “1. (Of a person or entity) having legal rights that are adversely affected; having been harmed by an infringement of legal rights. 2. (Of a person) angry or sad on grounds of perceived unfair treatment.”[5]" The first definition in Black’s would be synonymous with damaged or suffered a loss. If the Legislature intended such, it would have said “suffered a loss” or “damaged” based on the text of 501.211(2). The second definition in Black’s is more consistent with the meaning of aggrieved in the context of the statute. It is this meaning we adopt as the meaning of “aggrieved” under section 501.211(1).
This definition of “aggrieved” as being more expansive than “damaged” or “suffered a loss” is consistent with cases from this and other courts analyzing FDUTPA. In Davis v. Powertel, Inc., 776 So.2d 971, 975 (Fla. 1st DCA 2000), we did not precisely define “aggrieved” but held,
it follows that an aggrieved party may pursue a claim for declaratory or injunc-tive relief under the Act, even if the effect of those remedies would be limited to the protection of consumers who have not yet been harmed by the unlawful trade practice.[6]
Clearly, Davis construed “aggrieved” to be broader than “suffered a loss.” In Davis, Judge Webster wrote a concurring opinion and expressed concern that the expansive view of the meaning of aggrieved and broad standing allowed under this provision of FDUTPA provided “the potential for mischief.” Id. But Judge Webster felt “compelled by the remarkably broad language of the Florida Deceptive and Unfair Trade Practices Act” to reverse. Id. Judge Webster further noted that if the Davis court was giving too broad a reading of FDUTPA, the Legislature could always remedy the problem. In the over fourteen years since Davis was decided, the Legislature has not limited the definition of “aggrieved” in section 501.211(1).
In Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc., 123 So.3d 1149 (Fla. 5th DCA 2012), the Fifth District Court of Appeal was faced with the question of whether an aggrieved party had to suffer- monetary damages to be able to maintain an action for an injunction under section 501.211(1). It was alleged that Timeshares Direct used stolen information from Wyndham to solicit owners of Wyndham timeshares to use Timeshares Direct’s services. Id. at 1150. Similar to the instant case, the trial court ruled in Wynd-ham that because Wyndham could not prove actual damages on its FDUTPA claims, injunctive relief under FDUTPA was precluded as a matter of law. Id. at 1151. In reversing the trial court, our sister court reviewed the purpose of FDUTPA and held, as we hold here, that “regardless of whether an aggrieved'party can recover ‘actual damages’ under section 501.211(2), it may obtain injunctive relief under section 501.211(1).” Id. at 1152 (citing Del Monte Fresh Produce Co. v. Dole Food Co., Inc., 136 F.Supp.2d 1271, 1292-93 (S.D.Fla.2001), and Big Tomato v. Tasty Concepts, Inc., 972 F.Supp. 662, 664 (S.D.Fla.1997)). Furthermore, in Kelly v. Palmer, Reifler, & Assocs., P.A., 681 F.Supp.2d 1356 (S.D.Fla.2010), the federal *173 district court held that a party is aggrieved for purposes of section 50L211(1) even though the offending conduct was voluntarily ceased.
We do not attempt here to establish a bright-line test as to when a person is or is not aggrieved under FDUT-PA. We note that for someone to be aggrieved, the injury claimed to have been suffered cannot be merely speculative. Macias v. HBC of Florida, Inc., 694 So.2d 88 (Fla. 3d DCA 1997). It should be emphasized the plain language of section 501.211(1) offers declaratory and injunctive relief against a party “who has violated, is violating, or is otherwise likely to violate this part.” (Emphasis added). Thus, the deliberate use of the past tense establishes that the offending conduct need not be continuing in order to seek declaratory or injunctive relief. But, an “aggrieved” person for purposes of section 501.211(1) nevertheless must be able to demonstrate some specific past, present, or future grievance, otherwise the statute would have no meaning in violation of settled rales of statutory construction. See Unruh v. State, 669 So.2d 242 (Fla.1996) (explaining courts should avoid reading a statute in a manner which renders part of the statute meaningless).
We are guided by the definition of “aggrieved” in the context of “standing to enforce local comprehensive plans through development orders,” which is contained in section 163.3215(2), Florida Statutes. This statute provides in pertinent part,
As used in this section, the term “aggrieved or adversely affected party” means any person or local government that will suffer an adverse effect to an interest protected or furthered by the local government comprehensive plan, including interests related to health and safety, police and fire protection service systems, densities or intensities of development, transportation facilities, health care facilities, equipment or services, and environmental or natural resources. The alleged adverse interest may be shared in common with other members of the community at large but must exceed in degree the general interest in community good shared by all persons.[7]
(Emphasis added).
Therefore, a material issue of fact' remains as to whether Ahearn was “aggrieved” under section 501.211(1). Since Ahearn individually has a case or controversy as to his claim for declaratory and injunctive relief under section 501.211(1), he may also attempt to assert a claim as class representative for this relief pursuant to Sosa and Taran. We do not address whether certification of the class is appropriate per rale 1.220, Florida Rules of Civil Procedure, as this issue is not before us. The summary judgment granted by the trial court as to count three of the complaint is reversed as to the claims for declaratory and injunctive relief both individually and as putative class representative.

Declaratory and Injunctive Relief Under Chapter 86

Without specifically reciting statutory authority, count four asserted a claim for a declaratory judgment and also sought injunctive relief to enforce the anticipated declaratory judgment. Although the remedy sought is identical to a claim for declaratory and injunctive relief under FDUTPA in count three, we analyze count four under Chapter 86, Florida Statutes, which authorizes courts to issue declarato *174 ry judgments. See § 86.011, Florida Statutes. •
We agree with the trial court that the lack of a present controversy precludes Ahearn from having standing to seek a declaratory judgment and injunctive relief under Chapter 86. As the Florida Supreme Court has stated,
Before any proceeding for declaratory relief should be entertained it should be clearly made to appear that there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and an- . tagonistic interest in the subject matter, either in fact or law;' that the antagonistic and adverse interests are all before the court by proper process or class representation and that the relief sought ...is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.
May v. Holley, 59 So.2d 636, 639 (Fla.1952).
Here, there is no actual, present need for a declaration under Chapter 86. Since Mayo Clinic waived the balance owed and agreed to pay fees and costs, no right of Ahearn is dependent on the facts or law applicable to the facts. Ahearn no longer has an actual, present, adverse, and antagonistic interest to Mayo Clinic. See Martinez v. Scanlon, 582 So.2d 1167, 1171 (Fla.1991) (explaining that to seek a declaratory judgment there “must exist some justiciable controversy between adverse parties that needs to be resolved for a court to exercise its jurisdiction”). Given the lack of an actual controversy, any declaration under Chapter 86 would be an advisory opinion, which this Court has repeatedly stated is inappropriate. See Apthorp v, Detzner, 162 So.3d 236 (Fla. 1st DCA 2015); see also McCarty v. Myers, 125 So.3d 333 (Fla. 1st DCA 2013). Again, since Ahearn has no individual case or controversy, he cannot assert a claim as class representative. Sosa.

Conclusion

For the reasons set forth above, we affirm the final summary judgment as to the breach of contract count, the breach of implied covenant of good faith and fair dealing count, the actual damages portion of the FDUTPA count, and the declaratory judgment count under Chapter 86, Florida Statutes. We reverse the final summary judgment as to FDUTPA count ■ to the extent it seeks declaratory and injunctive relief for Ahearn individually and as a putative class representative as an allegedly aggrieved person.
' AFFIRMED in part,- REVERSED in part, and REMANDED.
SWANSON, J., concurs, ROWE, J., concurs in result in part and dissents in part with opinion.

. The final summary judgment did not address whether there was a cause of action arising out of such allegations. Mayo Clinic filed a motion to dismiss which argued that the allegation of disparate billing rates does not give rise to a cause of action. Following entry of the final summary judgment, the trial court denied as moot Mayo Clime’s motion to dismiss. We do not address the issue of whether the allegations give rise to any cause of action.

. Ahearn has not alleged that the $330.00 which he paid was an unreasonable amount.

. Appellant cited in support of his argument Weiss v. Regal Collections, 385 F.3d 337 (3d Cir.2004); Pitts v. Terrible Herbst, Inc., 653 F.3d 1081 (9th Cir.2011); Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239 (10th Cir.2011); and Stein v. Buccaneers Ltd. P’ship, 772 F.3d 698 (11th Cir.2014). He acknowledged that Damasco v. Clearwire Corp., 662 F.3d 891 (7th Cir.2011), did not support his position. We note that after oral argument was completed in this cause, Damasco was overruled by Chapman v. First Index, Inc., 796 F.3d 783 (7th Cir.2015).

. "Picking off” the class representative after certification of the class does not deprive the class representative of standing to continue the class action. Allstate Ind. Co. v. De La Rosa, 800 So.2d 245 (Fla. 3d DCA 2001).

. The Merriam-Webster Online Dictionary defines aggrieved as “feeling resentment at having been unfairly treated.” Merriam-Webster, http://www.merriam-webster.com (last visited August 20, 2015). This definition is consistent with the second definition in Black’s.

. We note that the trial court was not provided Davis by either of the parties below.

. In Nassau County v. Willis, 41 So.3d 270 (Fla. 1st DCA 2010j, we found standing under section 163.3215(2) where a party’s 'interest exceeded the interest of the general public.